## ALLEGED PROPERTY DAMAGE

**Where applicable, in addition to the foregoing, if plaintiff(s) allege property damage, the following items are additionally demanded:**

47. For each item of property damaged:

(a) Photograph(s) and or videotapes depicting the items alleged to have been damaged, prior to damage;

(b) Photograph(s) and or videotapes depicting items alleged to have been damaged, subsequent to damage;

(c) Original purchase receipts, cancelled checks, and/or charge slips for items alleged to have been damaged;

(d) Appraisals, warranties, etc. pertaining to the items alleged to have been damaged.

48. True and accurate copies of any and all insurance agreements held by plaintiff on day of said incident and pertaining to property damage and/or loss.

49. True and accurate copies of any and all notices of loss or claims made on the above policies pertaining to the damage alleged in the complaint.

## ALLEGED NEGLIGENT SUPERVISION

**Where applicable, in addition to the foregoing, if plaintiff(s) allege negligent supervision, the following items are additionally demanded:**

50. For every individual who allegedly failed to provide adequate supervision, please state (a) the name of the individual; (b) the address and phone number of the individual; (c) the name of the entity who employs the individual; (d) the title of the individual; (e) the date that the individual failed to provide adequate supervision; and (f) the time that the individual failed to provide adequate supervision. If you are unable to provide any of the above information, please provide a description reasonably sufficient to identify each individual. This demand includes all individuals, even if employed by any of the parties.

51. Identify the name or names of the person(s) it is alleged received inadequate supervision.

52. Provide the name(s) of any person(s) plaintiff will claim assaulted him/her with reference to the claim being asserted against the answering defendant(s).

53. If the person(s) identified in above have not yet appeared in this action, please provide copies of all documents, including but not limited to, affidavits of service and correspondence, which reflect any attempt to obtain jurisdiction over the individual(s).

54. Provide copies of any documents filed with or against any governmental agency(s) concerning the actions of any person(s) whom plaintiff(s) alleges caused the damages alleged in the complaint, including any criminal complaints filed and the disposition thereof.

55. For each individual you believe may have provided an oral or written statement concerning the supervision of any person involved in the incident, state (a) the name of any individual who provided a statement; and (b) the address and phone number of any individual who provided a statement. If you are unable to provide any of the above information, please provide a description reasonably sufficient to identify each person you believe may have provided a statement. This demand includes all individuals, even if employed by any of the parties.

## ALLEGED PREMISES LIABILITY

**Where applicable, in addition to the foregoing, if plaintiff(s) alleges that defendant(s) failed to properly maintain a premises, the following items are additionally demanded:**

56. If it is alleged that the answering defendant owned the premises complained of, please provide copies of any documents you will rely upon to establish defendant(s) ownership of the premises.

57. If it is alleged that the answering defendant(s) leased the premises complained of, please provide copies of any documents you will rely upon to establish defendant(s) tenancy.

58. Provide copies of any written lease(s) pertaining to the plaintiff(s) occupancy of the premises.

59. Provide copies of any documents or writings plaintiff(s) allege were sent to the defendant(s) concerning the condition of the premises, complaints made concerning the premises, and copies of any documents relating to any legal proceedings commenced by or against plaintiff(s) pertaining to their occupancy of the premises.

## MOTOR VEHICLE ACCIDENTS

**Where applicable, in addition to the foregoing, if plaintiff(s) alleges that defendant(s) contributed to a motor vehicle accident, the following items are additionally demanded:**

60. Provide a copy of the title for the vehicle being operated by plaintiff.

61. Provide a copy of plaintiff's drivers license.

62. Provide a copy of the registration for the vehicle in which plaintiff(s) was located when the incident occurred.

63. Provide a copy of any (a) repair record (including logs, bills, and receipts) for the vehicle in which plaintiff(s) was located for a two-year period prior to the alleged incident; and (b) maintenance records (including logs, bills, and receipts) for the vehicle in which plaintiff(s) was located for a two-year period prior to the alleged incident.

64. Provide a copy of any recall notice received regarding the vehicle in which plaintiff(s) was located when the incident occurred.

65. Provide photographs taken of the vehicle(s) involved in the accident taken:
    (a) Before the accident;
    (b) After the accident.

66. Provide any estimates to repair the vehicle involved in this accident.

67. Provide any records or receipts for towing of the vehicle involved in this accident.

68. Provide a copy of the MV-104 filed by, or on behalf of, the plaintiff as a result of this accident.

69. Provide a copy of any accident report provided to any insurance company regarding this accident.

70. Provide any notes or memorandum describing this accident.

71. Provide a copy of any transcript of any Department of Motor Vehicle hearing taken with respect to this accident.

72. Provide the date, location, name of defendant or respondent, and name of Judicial Hearing Officer who presided over, any Department of Motor Vehicle hearing taken with respect to this accident.

73. Provide a copy of any insurance policy (including any umbrella or excess policy) covering the vehicle in which plaintiff(s) was located at the time of the incident.

74. Provide a copy of the no-fault file pertaining to plaintiff(s).

## ALLEGED DEFAMATION

**Where applicable, in addition to the foregoing, if plaintiff(s) alleges that defendant(s) defamed plaintiff(s), the following items are additionally demanded:**

75. Provide a copy of any writing, publication (including any re-publications), and broadcast containing the alleged defamatory statement(s).

31

76. Provide copies of any documents, photographs, or writings which plaintiff(s) intend to use to demonstrate the untruthfulness of the alleged defamatory statement(s).

77. Provide copies of any documents, photographs, or writings which plaintiff(s) intend to use to demonstrate defendant(s) malice or reckless disregard for the truth.

78. Provide the name of any individual who you believe has information concerning the untruthfulness of the alleged defamatory statement(s) or whether the statements were made with malice or reckless disregard for the truth, stating (a) the name of the individual(s); and (b) the address and phone number of the individuals. If you are unable to provide any of the above information, please provide a description reasonably sufficient to identify each person. This demand includes all individuals, even if employed by any of the parties.

79. Provide copies of any documents, bills, invoices or writings which plaintiff(s) intend to use to prove any alleged special damages.

## ALLEGED LEAD-BASED PAINT

**Where applicable, in addition to the foregoing, if plaintiff(s) alleges injuries as a result of exposure to lead-based paint, the following items are additionally demanded:**

80. Provide duly executed OCA HIPPA compliant authorizations (which expire upon the conclusion of this case) allowing the Corporation Counsel to obtain birth and prenatal records of plaintiff(s); the authorization must include the name and address of the hospital or facility where plaintiff(s) was born and the date of birth of plaintiff(s).

81. Provide duly executed OCA HIPPA compliant authorizations (which expire upon the conclusion of this case) allowing the Corporation Counsel to obtain the records of any medical provider who provided prenatal care; the authorization must include the name and addresses of each medical provider and the dates of treatment.

82. Provide duly executed OCA HIPPA compliant authorizations (which expire upon the conclusion of this case) allowing the Corporation Counsel to obtain the records of all (a) health providers who have rendered pediatric care (including treatment for any of the injuries currently alleged) to plaintiff(s); and (b) health care providers that screened blood of plaintiff(s). The authorizations must contain the name and address of each medical provider as well as the dates of treatment or testing.

83. Provide duly executed authorizations enabling defendant(s) to obtain the records of any and all schools, and/or day care centers attended by the plaintiff(s) to date; the authorizations must include the name(s) and address(es) of the schools and the dates of attendance.

84. Provide the name and address of the academic institution most recently attended by the infant plaintiff's natural mother and a duly executed authorization allowing that institution to release its records to the defendant(s). If the infant plaintiff's mother is not the custodial parent, please provide the same information with respect to any adult acting as the infant plaintiff's guardian or caretaker.

85. If the infant plaintiff has any siblings, please provide the following for each such sibling:
(a) Name, date of birth and current address;
(b) Names and addresses of any and all schools, pre-schools or day-care centers attended, and duly executed authorizations allowing those institutions to release their records to the defendant(s).

86. For each infant plaintiff, provide the name, date of birth and last known address of the biological father.

87. Provide copies of any photographs, movies, or videotapes depicting the premises.

88. Provide copies of any written lease(s) pertaining to the plaintiff(s) occupancy of the premises.

89. Provide copies of any documents or writings plaintiff(s) allege were sent to the defendant(s) concerning the condition of the premises, complaints made concerning the premises, and copies

32
3-

of any documents relating to any legal proceedings commenced by or against plaintiff(s) pertaining to their occupancy of the premises.

## DEMANDS TO OTHER PARTIES (EXCLUDING PLAINTIFF(S))

**PLEASE TAKE FURTHER NOTICE** that within 30 days following service of this demand, all other parties (excluding plaintiff(s)) are requested pursuant to CPLR Article 31 to produce for discovery and inspection at the Office of the Corporation Counsel, the following items, except if at present you don't know the information requested, or if the requested documents are not within your possession or control, please so state, in which event you are requested to furnish same within 30 days after such information first becomes known to you, or such documents come into your possession or control: but, in any event, no later than forty-five days before trial.

## GENERAL DEMANDS TO PARTIES (EXCLUDING PLAINTIFF(S))

1. Provide copies of complete contents of insurance policies in effect on the date of occurrence, including all endorsements, terms, and conditions, including but not limited to, any which name this answering defendant(s) as an insured or as an additionally insured.

2. Provide copies of all excess and umbrella insurance policies in effect on date of occurrence, including but not limited to, any which name this answering defendant(s) as an insured or as an additionally insured.

3. Provide copies of all certificates of insurance in effect on the date of occurrence, including but not limited to, any which name this defendant, or any of its agencies, as an insured or as an additionally insured.

4. Copies of all contracts, sub-contracts, leases, franchises, and indemnification agreements in effect on date of occurrence.

5. Provide copies of any documents, records or photographs relating to any repairs made to the location, premises or item complained of in plaintiff(s) complaint prior to the happening of the alleged accident or occurrence.

6. Provide copies of any documents, records or logs relating to any maintenance (including cleaning, altering, and shoveling) performed at, or to, the location, premises, or item complained of in plaintiff(s) complaint prior to the happening of the alleged accident or occurrence.

7. Copies of all accident reports kept in the regular course of business regarding the occurrence complained of in plaintiff's complaint.

8. Provide a copy of plaintiff(s) Bill of Particulars and any discovery items previously exchanged, (including but not limited to; deposition transcripts and reports of physical examinations conducted of the plaintiff), and served upon or by defendant(s) or third-party defendant(s).

## DEMANDS TO OTHER PARTIES (EXCLUDING PLAINTIFF(S)) INVOLVING ALLEGED ROADWAY, SIDEWALK, AND CONSTRUCTION ACCIDENTS

**Where applicable, in addition to the foregoing, in any action alleging defective roadway, sidewalk, or construction, the following items are additionally demanded:**

9. Provide copies of all applications for permits, cut forms, opening tickets, work tickets, and paving orders.

10. Provide copies of all drawings, schematics, blueprints, strip maps, diagrams of underground facilities and of street hardware, including manhole covers, castings, and gratings.

11. Provide copies of all daily, weekly, and/or monthly progress reports, job progress photographs, and photographs of roadway color coding for entire period of construction.

12. Provide copies of all maintenance, inspection and repair records for the entire period of construction.

## DEMANDS TO OTHER PARTIES (EXCLUDING PLAINTIFF(S)) INVOLVING MOTOR VEHICLE ACCIDENTS

**Where applicable, in addition to the foregoing, in any action in which it is alleged that defendant(s) contributed to a motor vehicle accident, the following items are additionally demanded:**

13. Provide a copy of the title for any vehicle involved in the incident.

14. Provide a copy of the driver's license for the applicable driver involved in the incident.

15. Provide a copy of the registration for the applicable vehicle involved in the incident.

16. Provide the following records for the applicable vehicle involved in the incident for a two-year period prior to the alleged incident: (a) repair records (including logs, bills, and receipts); and (b) maintenance records (including logs, bills, and receipts).

17. Provide a copy of any recall notice received regarding any vehicle involved in the incident.

18. Provide photographs of the vehicle involved in the accident taken:
    (a) before the accident;
    (b) after the accident.

19. Provide any estimates to repair the vehicle involved in this accident.

20. Provide any records or receipts for towing of the vehicle involved in this accident.

21. Provide a copy of any MV-104 related to the incident.

22. Provide a copy of any Department of Motor Vehicle hearing related to the incident; and provide (a) the date, location, name of the parties, and name of Judicial Hearing Officer who presided over any Department of Motor Vehicle hearing.

23. Provide a copy of any accident report provided to any insurance company regarding this accident.

24. Provide any notes or memorandum describing this accident.

25. Provide a copy of any insurance policy, including any umbrella or excess policies, covering the vehicle defendant or third-party plaintiff was operating at the time of this accident.

26. Provide a copy of any no-fault file pertaining to plaintiff(s) related to the incident.

## ADDITIONAL DEMANDS TO ANY THIRD-PARTY PLAINTIFF WHO HAS AN ACTION AGAINST A PARTY REPRESENTED BY THE CORPORATION COUNSEL

**PLEASE TAKE FURTHER NOTICE** that within 30 days following service of this demand, any third party-plaintiff who has an action against a party represented by the Corporation Counsel, it is requested pursuant to CPLR Article 31 to produce for discovery and inspection at the Office of the Corporation Counsel, the following items, except if at present you don't know the information requested, or if the requested documents are not within your possession or control, please so state, in which event you are requested to furnish same within 30 days after such information first becomes known to you, or such documents come into your possession or control: but, in any event, no later than forty-five days before trial.

27. Provide a copy of any document (with all attachments) previously exchanged by the parties (including pleadings, bills of particulars, deposition transcripts, medical records, correspondence, motions, discovery responses, etc.).

28. Provide a copy of all court orders and stipulations issued in the litigation.

34

**DEMAND FOR VERIFIED BILL OF PARTICULARS TO ANY THIRD-PARTY PLAINTIFF WHO HAS AN ACTION AGAINST A PARTY REPRESENTED BY THE CORPORATION COUNSEL**

**PLEASE TAKE NOTICE** that pursuant to CPLR 3041, any third party-plaintiff who has an action against a party represented by the Corporation Counsel is required within 30 days following service of this demand to serve upon ZACHARY W. CARTER, Corporation Counsel, a verified bill of particulars setting forth in reasonable detail a statement of the following:

1. State separately the alleged negligence of any party represented by the Corporation Counsel, if applicable.

2. State separately the alleged intentional wrongs committed by any party represented by the Corporation Counsel, if applicable.

3. State the name of any employee or agent of any party represented by the Corporation Counsel alleged to have committed any act which contributed to an injury.

4. State (a) whether any repair was made to the accident location prior to the happening of the alleged accident; (b) when any repair was made; (c) where any repair was made; (d) who made any repair; and (e) what repairs were made.

5. State (a) whether any party represented by the Corporation Counsel had notice of an alleged defective condition which contributed to an injury; (b) which party had notice; (c) whether the party had actual notice of a condition; (d) whether the party had constructive notice of a condition; and (e) whether it is alleged that the party created the condition.

6. If actual notice is claimed, please state (a) the name of any individual(s) who had actual notice; (b) the job title of any individual(s) who had actual notice; (c) the employer of any individual(s) who had actual notice; and (d) the address and phone number of any individual(s) who had actual notice. If you are unable to provide any of the above information, please provide a description reasonably sufficient to identify each person you believe may have had actual notice. This demand includes all individuals, even if employed by any of the parties.

7. If constructive notice of a condition is claimed, please state the alleged condition and the length of time said condition is alleged to have existed prior to the happening of the alleged incident.

8. If third-party plaintiff(s) claims the violation of any statute, ordinance, rule, order, regulation, or directive, please state separately all such statutes, ordinances, rules, regulations, and directives alleged to have been violated by any party represented by the Corporation Counsel.

9. If applicable, please state whether any party represented by the Corporation Counsel was a party to a contract; and please state the:

    (c) parties to the contract;

    (d) contract number.

10. If applicable, please state any item of construction, excavation, and demolition work which was not so constructed, shored, equipped, guarded, arranged, operated, and conducted as to provide reasonable and adequate safety; and please state (a) the manner in which the work caused an alleged injury; and (b) if applicable, the control exercised by any party represented by the Corporation Counsel and the exact manner in which said control was exercised.

Dated:      New York, New York
            August _____, 2014

                                        Yours, etc.
                                        ZACHARY W. CARTER
                                        Corporation Counsel
                                        Attorney for Defendants  MICHAEL R.
                                        BLOOMBERG,  COMMISSIONER RAYMOND
                                        W. KELLY,  COMMISSIONER SALVATORE J.
                                        CASSANO,  NEW YORK POLICE
                                        DEPARTMENT,  NEW YORK FIRE
                                        DEPARTMENT EMS,
                                        100 Church Street
                                        New York, New York 10007

TO:


BARBARA KULIG HOCHMULLER
Plaintiff Pro Se
490 Second Avenue, 5B
New York, NY 10016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------ x

BARBARA KULIG HOCHMULLER,

                                  Plaintiff(s),

                      -against-

FORMER MAYOR OF NEW YORK CITY MICHAEL R.
BLOOMBERG, NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, PRESIDENT AND CEO DR.
RAMANATHAN RAJU, FORMER PRESIDENT AND CEO
ALAN D. AVILES, BELLEVUE HOSPITAL CENTER, DR.
OMAR FATTAL, INTERIM ASSOCIATE DIRECTOR OF
INPATIENT PSYCHIATRY, DEPARTMENT OF
PSYCHIATRY, DR. JAMEY LEVY, PRIMARY CLINICIAN
AND ATTENDING-LISTED ADULT DISCHARGE AND
AFTER-CARE PLAN, DR. SAMI KHALIFE, ATTENDING
PSYCHIATRIST- NOT LISTED ADULT DISCHARGE AND
AFTER-CARE PLAN, DR. LLOYD WASSERMAN,
INTERNIST, NEW YORK POLICE DEPARTMENT,
COMMISSIONER RAYMOND W. KELLY, RECORDS
ACCESS OFFICER LIEUTENANT RICHARD
MANTELLINO. NEW YORK FIRE DEPARTMENT EMS,
COMMISSIONER SALVATORE J. CASSANO,

                                Defendant(s).

------------------------------------------------------------------------ x

**NOTICE OF DEPOSITION**

Index #: 100745/2014

Law Dept. #: 2014-026916

      **PLEASE TAKE NOTICE**, that pursuant to Article 31 of the Civil Practice Law and Rules,

the undersigned will take by deposition the testimony of all adverse parties at a time and date to be mutually

agreed upon at the pre-calendar conference.

      **PLEASE TAKE FURTHER NOTICE**, that at the time of the taking of the testimony the

said adverse parties shall produce all books and papers in their possession relating to the issues upon which

said parties are to be examined and upon your failure to so produce them, parol and/or secondary evidence

thereof and of the contents of the same will be required.

357

Yours, etc.
ZACHARY W. CARTER
Corporation Counsel
Attorney for Defendants  MICHAEL R.
BLOOMBERG,  COMMISSIONER RAYMOND
W. KELLY,  COMMISSIONER SALVATORE J.
CASSANO,  NEW YORK POLICE
DEPARTMENT,  NEW YORK FIRE
DEPARTMENT EMS,
100 Church Street
New York, New York 10007

TO:
BARBARA KULIG HOCHMULLER
Plaintiff Pro Se
490 Second Avenue, 5B
New York, NY 10016

**VERIFICATION**

Re: BARBARA KULIG HOCHMULLER; LD #: 2014-026916

ANTHONY HIMMEL being duly sworn deposes and says that: deponent is an employee of the Office of the Corporation Counsel; that deponent has read the foregoing answer, cross-claim(s) and counterclaim(s), if any, and knows the contents thereof; that the same are true to deponent's own knowledge, except as to the matters alleged upon information and belief, which deponent believes to be true based upon the files, books and records maintained by The City of New York, New York City Health and Hospitals Corporation or the New York City Board/Department of Education, and the officers or agents thereof.

Dated:     New York, New York
           August ___, 2014

                                        ANTHONY HIMMEL

Sworn to before me this
___ day of August, 2014

       NOTARY PUBLIC

JENNIFER E. MAZZIO
Commissioner of Deeds
City of New York No. 3-7419
Certificate Filed in New York County
Commission Expires April 1, 20__

**STIPULATION/CERTIFICATION**

IT IS HEREBY STIPULATED AND AGREED, that at any time prior to the filing of a note of issue in this action, plaintiff(s) may amend the complaint to name additional defendants herein, provided that such additional defendants shall not include the City of New York, the Board/Department of Education, Health & Hospitals Corporation, City University of New York, or any of their respective departments, subdivisions or employees, nor any other person entitled to defense or indemnification by the City of New York.

The signature below shall constitute the signature required pursuant to NYCRR 130-1.1-a and pertains to all of the enclosed documents: answer, cross-claim(s) and counter-claims(s), if any, together with the accompanying combined demands for particulars and discovery.

Dated:     New York, New York
           August ___, 2014

                   By:     Marilyn Christopher
                           MARILYN CHRISTOPHER
                           Special Assistant Corporation Counsel

_____
Attorney(s) for Plaintiff(s)

**Please do not send correspondence to the above named individual unless otherwise directed.** See Answer back for additional contact information.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------- x

BARBARA KULIG HOCHMULLER,

Plaintiff(s),                    **AFFIDAVIT OF SERVICE**

-against-

Index #:  100745/2014

FORMER MAYOR OF NEW YORK CITY MICHAEL R.
BLOOMBERG, NEW YORK CITY HEALTH AND HOSPITALS          Law Dept. #:  2014-026916
CORPORATION, PRESIDENT AND CEO DR. RAMANATHAN
RAJU, FORMER PRESIDENT AND CEO ALAN D. AVILES,
BELLEVUE HOSPITAL CENTER, DR. OMAR FATTAL, INTERIM
ASSOCIATE DIRECTOR OF INPATIENT PSYCHIATRY,
DEPARTMENT OF PSYCHIATRY, DR. JAMEY LEVY, PRIMARY
CLINICIAN AND ATTENDING-LISTED ADULT DISCHARGE
AND AFTER-CARE PLAN, DR. SAMI KHALIFE, ATTENDING
PSYCHIATRIST- NOT LISTED ADULT DISCHARGE AND
AFTER-CARE PLAN, DR. LLOYD WASSERMAN, INTERNIST,
NEW YORK POLICE DEPARTMENT, COMMISSIONER
RAYMOND W. KELLY, RECORDS ACCESS OFFICER
LIEUTENANT RICHARD MANTELLINO. NEW YORK FIRE
DEPARTMENT EMS, COMMISSIONER SALVATORE J.
CASSANO,

Defendant(s).

------------------------------------------------------------------- x

STATE OF NEW YORK          )
                           : ss.:
COUNTY OF NEW YORK         )

_____, being duly sworn deposes and says that:

1.  The deponent is not a party to the action and is 18 years of age or older.

2.  On _____, the deponent served the annexed ANSWER AND DEMANDS upon

the following person or persons:

BARBARA KULIG HOCHMULLER
Plaintiff(s) Pro Se
by mailing a copy for each of them to
490 Second Avenue, 5B
New York, NY 10016

the address designated by him/her/them for that purpose by depositing the same in a first class, postpaid, properly
addressed wrapper, in a post office or official depository under the exclusive care and custody of the United States
Postal Service within the State of New York pursuant to CPLR 2103(c).

_____

Sworn to before me this

_____ day of _____, 20___.



Index #: 100745/2014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

BARBARA KULIG HOCHMULLER,

Plaintiff(s),

- against -

FORMER MAYOR OF NEW YORK CITY MICHAEL R. BLOOMBERG,
NEW YORK CITY HEALTH AND HOSPITALS CORPORATION,
PRESIDENT AND CEO DR. RAMANATHAN RAJU, FORMER PRESIDENT
AND CEO ALAN D. AVILES, BELLEVUE HOSPITAL CENTER, DR.
OMAR FATTAL, INTERIM ASSOCIATE DIRECTOR OF INPATIENT
PSYCHIATRY, DEPARTMENT OF PSYCHIATRY, DR. JAMEY LEVY,
PRIMARY CLINICIAN AND ATTENDING-LISTED ADULT DISCHARGE
AND AFTER-CARE PLAN, DR. SAMI KHALIFE, ATTENDING
PSYCHIATRIST- NOT LISTED ADULT DISCHARGE AND AFTER-CARE
PLAN, DR. LLOYD WASSERMAN, INTERNIST, NEW YORK POLICE
DEPARTMENT, COMMISSIONER RAYMOND W. KELLY, RECORDS
ACCESS OFFICER LIEUTENANT RICHARD MANTELLINO. NEW YORK
FIRE DEPARTMENT EMS, COMMISSIONER SALVATORE J. CASSANO,

Defendant(s).

## ANSWER AND DEMANDS

ZACHARY W. CARTER
Corporation Counsel
Attorney for Defendants  MICHAEL R. BLOOMBERG, COMMISSIONER
RAYMOND W. KELLY, COMMISSIONER SALVATORE J. CASSANO, NEW
YORK POLICE DEPARTMENT, NEW YORK FIRE DEPARTMENT EMS,
100 Church Street
New York, New York 10007
Telephone Numbers:

Early Intervention Unit (settlements -- all Boroughs)
    (212) 356-2680/2683
All Other Matters (by county of venue)
    (718) 590-3487 (EBT's-3971) (Bronx)
    (718) 222-2000 (EBT's-2069) (Kings)
    (212) 788-0646 (EBT's-0628) (New York)
    (718) 206-4731 (EBT's (718) 206-4703) (Queens)
    (718) 447-5983 (EBT's-5985) (Richmond)
    (212) 356-3235 (Pleadings Unit)

Please refer to the following Law Dept. #: **2014-026916**

and indicate the County in which the action is pending in all papers, correspondence and
other communications with respect thereto.

ABOUT LII  /  GET THE LAW  /  LAWYER DIRECTORY  /  GET LEGAL FORMS  /  LEGAL ENCYCLOPEDIA  /  H

U.S. Code        › Title 26 › Subtitle A › Chapter 1 › Subchapter
F › Part I › § 501                                    prev | NEXT

U.S. C0

Wex: Incor
Title 26 US
Table of P
Parallel Ta

# 26 U.S. Code § 501 - Exemption from tax on corporations, certain trusts, etc.

Current through Pub. L. 113–142, except 128. (See Public Laws for the current Congress.)                                                    §

US Code      Notes      Updates                                                    Donatio

**(a) Exemption from taxation**

An organization described in subsection (c) or (d) orsection 401 (a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

**(b) Tax on unrelated business income and certain other activities**

26 U.S. Code § 501 - Exemption from tax on corporations, certain trusts, etc. | LII / Legal Information Insti... Page 2 of 54

Case 1:14-cv-08067-CM    Document 11-1    Filed 10/22/14    Page 15 of 60

An organization exempt from taxation under subsection (a) shall be subject to tax to the extent provided in parts II, III, and VI of this subchapter, but (notwithstanding parts II, III, and VI of this subchapter) shall be considered an organization exempt from income taxes for the purpose of any law which refers to organizations exempt from income taxes.

(c) List of exempt organizations

The following organizations are referred to in subsection (a):

(1) Any corporation organized under Act of Congress which is an instrumentality of the United States but only if such corporation—

(A) is exempt from Federal income taxes—

(i) under such Act as amended and supplemented before July 18, 1984, or

(ii) under this title without regard to any provision of law which is not contained in this title and which is not contained in a revenue Act, or

(B) is described in subsection (l).

(2) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt under this section. Rules similar to the rules of subparagraph (G) of paragraph (25) shall apply for purposes of this paragraph.

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports

- EX 2 -

http://www.law.cornell.edu/uscode/text/26/501

competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

(4)

(A) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes.

(B) Subparagraph (A) shall not apply to an entity unless no part of the net earnings of such entity inures to the benefit of any private shareholder or individual.

(5) Labor, agricultural, or horticultural organizations.

(6) Business leagues, chambers of commerce, real-estate boards, boards of trade, or professional football leagues (whether or not administering a pension fund for football players), not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

- 113 S. ending
- 113 S. treatm
- 113 S. politic
- 113 S. provis
- 113 S. firearr
- 113 S. compr
- 113 S. orient

Data court
Deepbills |

STAY INVC

LII Ar

LII Su

~ EX3 ~

# 501(c) organization

From Wikipedia, the free encyclopedia

A **501(c) organization**, also known colloquially as a **501(c)**, is a tax-exempt nonprofit organization in the United States. Section 501(c) of the United States Internal Revenue Code (26 U.S.C. § 501(c) (http://www.law.cornell.edu/uscode/26/501(c).html)) provides that 29 types of nonprofit organizations are exempt from some federal income taxes. Sections 503 through 505 set out the requirements for attaining such exemptions. Many states refer to Section 501(c) for definitions of organizations exempt from state taxation as well. 501(c) organizations can receive unlimited contributions from individuals, corporations, and unions.

The most common type of tax-exempt nonprofit organization falls under category 501(c)(3), whereby a nonprofit organization is exempt from federal income tax if its activities have the following purposes: charitable, religious, educational, scientific, literary, testing for public safety, fostering amateur sports competition, or preventing cruelty to children or animals. The 501(c)(4) and 501(c)(6) categories are for politically active nonprofit organizations, which have become increasingly important since the 2004 federal elections.



Wikisource has original text related to this article:

**USC 26 § 501**

## Contents

- 1 Types
- 2 General compliance issues
- 3 501(c)(3)
    - 3.1 Obtaining status
    - 3.2 Political activity
        - 3.2.1 Elections
        - 3.2.2 Lobbying

- EX 4 -

- 4 501(c)(4)
- 5 501(c)(5)
- 6 501(c)(6)
- 7 See also
- 8 References
- 9 Further reading
- 10 External links

# Types

According to the IRS Publication 557†, in the *Organization Reference Chart* section, the following is an exact list of 501 (c) organization types and their corresponding descriptions.[1]

- 501(c)(1) — Corporations Organized Under Act of Congress (including Federal Credit Unions)
- 501(c)(2) — Title Holding Corporation for Exempt Organization[2]
- 501(c)(3) — Religious, Educational, Charitable, Scientific, Literary, Testing for Public Safety, to Foster National or International Amateur Sports Competition, or Prevention of Cruelty to Children or Animals Organizations
- 501(c)(4) — Civic Leagues, Social Welfare Organizations, and Local Associations of Employees
- 501(c)(5) — Labor, Agricultural and Horticultural Organizations
- 501(c)(6) — Business Leagues, Chambers of Commerce, Real Estate Boards, etc.
- 501(c)(7) — Social and Recreational Clubs
- 501(c)(8) — Fraternal Beneficiary Societies and Associations
- 501(c)(9) — Voluntary Employee Beneficiary Associations
- 501(c)(10) — Domestic Fraternal Societies and Associations

- 501(c)(11) — Teachers' Retirement Fund Associations
- 501(c)(12) — Benevolent Life Insurance Associations, Mutual Ditch or Irrigation Companies, Mutual or Cooperative Telephone Companies, etc.
- 501(c)(13) — Cemetery Companies
- 501(c)(14) — State-Chartered Credit Unions, Mutual Reserve Funds
- 501(c)(15) — Mutual Insurance Companies or Associations
- 501(c)(16) — Cooperative Organizations to Finance Crop Operations
- 501(c)(17) — Supplemental Unemployment Benefit Trusts
- 501(c)(18) — Employee Funded Pension Trust (created before June 25, 1959)
- 501(c)(19) — Post or Organization of Past or Present Members of the Armed Forces
- 501(c)(20) — Group Legal Services Plan Organizations.
- 501(c)(21) — Black lung Benefit Trusts
- 501(c)(22) — Withdrawal Liability Payment Fund
- 501(c)(23) — Veterans Organization (created before 1880)
- 501(c)(24) — Section 4049 ERISA Trusts
- 501(c)(25) — Title Holding Corporations or Trusts with Multiple Parents
- 501(c)(26) — State-Sponsored Organization Providing Health Coverage for High-Risk Individuals
- 501(c)(27) — State-Sponsored Workers' Compensation Reinsurance Organization
- 501(c)(28) — National Railroad Retirement Investment Trust
- 501(c)(29) — Qualified Nonprofit Health Insurance Issuers (Created in section 1322(h)(1) of the Affordable Care Act)[3]


— EX6 —

† 501(c)(20) and 501(c)(24) organization types receive little mention in IRS Publication 557 and are not included in its *Organization Reference Chart*. 501(c)(20) organizations are no longer tax-exempt under Section 501(c)(20) after June 30, 1992, but they may request to become exempt under Section 501(c)(9) effective July 1, 1992.[4] 501(c)(24) organizations are described as Section 4049 ERISA Trusts; Section 4049 of ERISA has been repealed.[5]

Certain day care centers may qualify as tax-exempt under Section 501(k).[6][7][8] The day care center must provide child care away from their homes.[7] At least 85 percent of the children served must be cared for while their parent or guardian is either employed, seeking employment, or a full-time student.[9] Most of the day care center's funding must come from fees received for day care services.[9] The day care center must also provide child care services to the general public.[7] The tax exemption for certain day care centers was part of the Deficit Reduction Act of 1984.[8]

# General compliance issues

Under Section 511, a 501(c) organization is subject to tax on its "unrelated business income", whether or not the organization actually makes a profit, but not including selling donated merchandise or other business or trade carried on by volunteers, or certain bingo games.[10] Disposal of donated goods valued over $2,500, or acceptance of goods worth over $5,000 may also trigger special filing and record-keeping requirements.

Tax exemption does not excuse an organization from maintaining proper records and filing any required annual or special-purpose tax returns, e.g., 26 U.S.C. § 6033 (http://www.law.cornell.edu/uscode/26/6033.html) and 26 U.S.C. § 6050L (http://www.law.cornell.edu/uscode/26/6050L.html). Prior to 2008, an annual return was not generally required from an exempt organization accruing less than $25,000 in gross income yearly.[11] Since 2008, many such organizations must file a yearly "e-Postcard" known as Form 990-N, or risk losing their exemption, with the maximum accrual being $50,000 to file a 990-N.[12] Form 990-N must be submitted electronically using an authorized IRS e-file provider. Other types of Form 990 may be submitted via mail and some are available electronically through an IRS e-file provider.

~ EX7 ~

Failure to file required returns such as Form 990 (Return of Organization Exempt From Income Tax) may result in fines of up to $250,000 per year. Exempt or political organizations, excluding churches or similar religious entities, must make their returns, reports, notices, and exempt applications available for public inspection. The organization's Form 990 (or similar such public record as the Form 990-EZ or Form 990-PF) is available for public inspection and photocopying at the offices of the exempt organization, through a written request and payment for photocopies by mail from the exempt organization, or through a direct Form 4506-A 'Request for Public Inspection or Copy or Political Organization IRS Form' request to the IRS of for the past three tax years. Form 4506-A also allows the public inspection and/or photocopying access to Form 1023 'Application for Recognition of Exemption' or Form 1024, Form 8871 'Political Organization Notice of Section 527 Status', and Form 8872 'Political Organization Report of Contribution and Expenditures'. Internet access to an organization's 990 and some other forms are available through information services such as GuideStar.

Failure to file such timely returns and to make other specific information available to the public also is prohibited.[13]

# 501(c)(3)

501(c)(3) exemptions apply to corporations, and any community chest, fund, cooperating association or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, to foster national or international amateur sports competition, or for the prevention of cruelty to children or animals.[14][15] There are also supporting organizations—often referred to in shorthand form as "Friends of" organizations.[16][17][18][19][20]

Another provision, 26 U.S.C. § 170 (http://www.law.cornell.edu/uscode/26/170.html), provides a deduction, for federal income tax purposes, for some donors who make charitable contributions to most types of 501(c)(3) organizations, among others. Regulations specify which such deductions must be verifiable to be allowed (e.g., receipts for donations over $250). Due to the tax deductions associated with donations, loss of 501(c)(3) status can be highly challenging to a charity's continued operation, as many foundations and corporate matching programs do not grant funds to a charity without such status, and individual donors often do not donate to such a charity due to the unavailability of the deduction.

-EX8-

Testing for public safety is described under section 509(a)(4) of the code, which makes the organization a public charity and not a private foundation,[21] but contributions to 509(a)(4) organizations are not deductible by the donor for federal income, estate, or gift tax purposes.

The two exempt classifications of 501(c)(3) organizations are as follows:[22]

- A public charity, identified by the Internal Revenue Service (IRS) as "not a private foundation", normally receives a substantial part of its income, directly or indirectly, from the general public or from the government. The public support must be fairly broad, not limited to a few individuals or families. Public charities are defined in the Internal Revenue Code under sections 509(a)(1) through 509(a)(4).

- A private foundation, sometimes called a non-operating foundation, receives most of its income from investments and endowments. This income is used to make grants to other organizations, rather than being disbursed directly for charitable activities. Private foundations are defined in the Internal Revenue Code under section 509(a) as 501(c)(3) organizations, which do not qualify as public charities.

Churches must meet specific requirements in order to obtain and maintain tax exempt status; these are outlined in IRS Publication 1828: Tax guide for churches and religious organizations.[23] This guide outlines activities allowed and not allowed by churches under the 501(c)(3) designation. A private, nonprofit organization, GuideStar, also provides reputable and detailed results for web-based searching to verify information on 501(c)(3) organizations.[24]

Before donating to a 501(c)(3) organization, a donor may wish to consult the searchable online IRS list of charitable organizations[25] as well as lists that may be maintained by a state on a portion of its web portal devoted to its "department of justice" or "office of attorney general".

Consumers may file IRS Form 13909 with documentation to complain about inappropriate or fraudulent (i.e., fundraising, political campaigning, lobbying) activities by any 501(c)(3) tax-exempt organization.[26]

- EX9 -

## Obtaining status

The basic requirement of obtaining tax exempt status is that the organization is specifically limited in powers to purposes that the IRS classifies as tax exempt purposes. Unlike for-profit corporations that benefit from broad and general purposes, non profit organizations need to be limited in powers to function with tax exempt status, but a non profit corporation is by default not limited in powers until it specifically limits itself in the articles of incorporation and/or nonprofit corporate bylaws. This limiting of the powers is crucial to obtaining tax exempt status with the IRS and then on the state level.[27] Organizations acquire 501(c)(3) tax exemption by filing IRS Form 1023 (http://www.irs.gov/pub/irs-pdf/f1023.pdf). As of 2006 the form must be accompanied by a $850 filing fee if the yearly gross receipts for the organization are expected to average $10,000 or more.[28][29] If yearly gross receipts are expected to average less than $10,000, the filing fee is reduced to $400.[28][29] There are some classes of organizations that automatically are treated as tax exempt under 501(c)(3), without the need to file Form 1023:

- Churches, their integrated auxiliaries, and conventions or associations of churches[30]
- Organizations that are not private foundations and that have gross receipts that normally are not more than $5,000[31]

The IRS also expects to release a software tool called Cyber Assistant, which assists with preparation of the application for tax exemption, but as of late 2011 the release date is unclear.[32]

There is an alternative way for an organization to obtain status if an organization has applied for a determination and either there is an actual controversy regarding a determination or the Internal Revenue Service has failed to make a determination. In these cases, the United States Tax Court, the United States District Court for the District of Columbia, and the United States Court of Federal Claims have concurrent jurisdiction to issue a declaratory judgment of the organization's qualification if the organization has exhausted administrative remedies with the Internal Revenue Service.[33][34]

## Political activity

-EXID-

Section 501(c)(3) organizations are prohibited from supporting political candidates, and are subject to limits on lobbying. They risk loss of tax exempt status if these rules are violated.[35][36] An organization that loses its 501(c)(3) status due to being engaged in political activities cannot then qualify for 501(c)(4) status.[37]

## Elections

Organizations described in section 501(c)(3) are prohibited from conducting political campaign activities to intervene in elections to public office.[38] The Internal Revenue Service website elaborates upon this prohibition as follows:

Under the Internal Revenue Code, all section 501(c)(3) organizations are absolutely prohibited from directly or indirectly participating in, or intervening in, any political campaign on behalf of (or in opposition to) any candidate for elective public office. Contributions to political campaign funds or public statements of position (verbal or written) made on behalf of the organization in favor of or in opposition to any candidate for public office clearly violate the prohibition against political campaign activity. Violating this prohibition may result in denial or revocation of tax-exempt status and the imposition of certain excise taxes.

Certain activities or expenditures may not be prohibited depending on the facts and circumstances. For example, certain voter education activities (including presenting public forums and publishing voter education guides) conducted in a non-partisan manner do not constitute prohibited political campaign activity. In addition, other activities intended to encourage people to participate in the electoral process, such as voter registration and get-out-the-vote drives, would not be prohibited political campaign activity if conducted in a non-partisan manner.

On the other hand, voter education or registration activities constitute prohibited participation or intervention if there is evidence of bias that would:

- ▪ Favor one candidate over another
- ▪ Oppose a candidate in some manner

- Have the effect of favoring a candidate or group of candidates

The Internal Revenue Service provides resources to exempt organizations and the public to help them understand the prohibition. As part of its examination program, the IRS also monitors whether organizations are complying with the prohibition.

## Lobbying

In contrast to the prohibition on political campaign interventions by all section 501(c)(3) organizations, public charities (but not private foundations) may conduct a limited amount of lobbying to influence legislation. Although the law states that "No substantial part..." of a public charity's activities can go to lobbying, charities with large budgets may lawfully expend a million dollars (under the "expenditure" test), or more (under the "substantial part" test) per year on lobbying.[39] To clarify the standard of the "substantial part" test, Congress enacted §501 (h) (called the Conable election after its author, Representative Barber Conable). The section establishes limits based on operating budget that a charity can use to determine if it meets the substantial test. This changes the prohibition against direct intervention in partisan contests only for lobbying. The organization is now presumed in compliance with the substantiality test if they work within the limits. The Conable Election requires a charity to file a declaration with the IRS and file a functional distribution of funds spreadsheet with their Form 990. IRS form 5768[40] is required to make the Conable election.

# 501(c)(4)

The origins of 501(c)(4) organizations date back to the Revenue Act of 1913, which created a new group of tax-exempt organizations dedicated to social welfare in a precursor to what is now Internal Revenue Code Section 501(c)(4).[41]

501(c)(4) organizations are generally civic leagues and other corporations operated exclusively for the promotion of "social welfare", such as civics and civics issues, or local associations of employees with membership limited to a designated company or people in a particular municipality or neighborhood, and with net earnings devoted exclusively to

- EX 12 -

charitable, educational, or recreational purposes.[42] An organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting the common good and general welfare of the people of the community.[37] [43]

501(c)(4) organizations may inform the public on controversial subjects and attempt to influence legislation relevant to its program[44] and, unlike 501(c)(3) organizations, they may also participate in political campaigns and elections, as long as their primary activity is the promotion of social welfare.[45] The tax exemption for 501(c)(4) organizations applies to most of their operations, but contributions may be subject to gift tax, and income spent on political activities – generally the advocacy of a particular candidate in an election – is taxable.[46] An "action" organization generally qualifies as a 501(c) (4) organization.[47] An "action" organization is one whose activities substantially include, or are exclusively,[48] direct lobbying or grass roots lobbying related to advocacy for or against legislation or proposing, supporting, or opposing legislation that is related to its purpose.[49] A 501(c)(4) organization may directly or indirectly support or oppose a candidate for public office as long as such activities are not a substantial amount of its activities.[37][50]

Contributions to 501(c)(4) organizations are usually not deductible as charitable contributions for U.S. federal income tax, with a few exceptions.[51] Dues or contributions to 501(c)(4) organizations may be deductible as a business expense under IRC 162, although amounts paid for intervention or participation in any political campaign, direct lobbying, grass roots lobbying, and contact with certain federal officials are not deductible.[52] If a 501(c)(4) engages in a substantial amount of these activities, then only the amount of dues or contributions that can be attributed to other activities may be deductible as a business expense.[53] The organization has to provide a notice to its members containing a reasonable estimate of the amount related to lobbying and political campaign expenditures.[52] It must also state that contributions to the organization are not deductible as charitable contributions during fundraising.[52]

−EX13−

501(c)(4) organizations are not required to disclose their donors publicly.[54] The lack of disclosure has led to extensive use of the 501(c)(4) provisions for organizations that are actively involved in lobbying, and has become controversial.[55][56] Criticized as "dark money", spending from these organizations on political TV ads has exceeded spending from Super PACs.[57][58] Spending by organizations that do not disclose their donors has increased from less than $5.2 million in 2006 to well over $300 million in the 2012 election.[59]

The use of 501(c)4's has been affected by the 2010 Citizens United decision, in which the Supreme Court struck the part of the McCain-Feingold Act that prohibited for-profit corporations, non-profit corporations, and unions from broadcasting electioneering communications. The Act defined an electioneering communication as a communication, that mentions a candidate's name sixty days before a primary or thirty days before a general election. Through 501(c)4 organizations electioneering communications can since be aired at any time.

## 501(c)(5)

501(c)(5) organizations include labor, agricultural and horticultural organizations. Labor unions, county fairs and flower societies are examples of these types of groups. Labor union organizations were a primary benefactor of this organization type; dating to the 1800s. IRS, from a federal level, stipulates a federal requirement and duty of providing service to the members first. They have other requirements such as a requirement that benefits may not inure to a specific member but the rules for inurement vary among the three different types of organizations under this segment. They can make unlimited corporate, individual, or union contributions[60]

## 501(c)(6)

_EX 14_

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through August 20, 2014.

Selected Entity Name: PHIPPS HOUSES
Selected Entity Status Information

**Current Entity Name:** PHIPPS HOUSES
**DOS ID #:** 91
**Initial DOS Filing Date:**
**County:** NEW YORK
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC NOT-FOR-PROFIT CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

**Registered Agent**
CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

This office does not record information regarding
the names and addresses of officers, shareholders
or directors of nonprofessional corporations except
the chief executive officer, if provided, which
would be listed above. Professional corporations
must include the name(s) and address(es) of the
initial officers, directors, and shareholders in the
initial certificate of incorporation, however this
information is not recorded and only available by
viewing the certificate.

~EX 15~

**\*Stock Information**

**# of Shares**          **Type of Stock**          **$ Value per Share**

No Information Available

\*Stock information is applicable to domestic business corporations.

**Name History**

**Filing Date** **Name Type**    **Entity Name**

Actual        PHIPPS HOUSES

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results  New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

~ EX 16 ~

Tax Exempt Organizations, NonProfit Corporations, Charities





# TaxExemptWorld.com

Join Now >>  or  Sign In >>

| Enter the Name of an Organization | GO |

*See NonProfit Organization Information*

*2,145,376 Organizations  Assets: $7,578,057,021,600  Income: $3,802,949,109,3...*

Home  |  Organization Search  |  Data Downloads  |  Sign In  |  About

Data Updated on :

## Luna Vase

Crate and Barrel

$49.97 $129.95
Find Furniture, Housewares & More at Crate & Barrel. Shop Now.

## Tax Exempt/NonProfit Organization Search By Name

Enter the **Name** of a Tax Exempt/NonProfit Organization:

| phipps houses | GO |

(TIP: partial names can be entered; for example, searching on the word *trust* will return all organizations that contain the word *trust*)

**(\* Reported Asset, Income, and Revenue Amounts** are available with membership or data download)

**Search Results**

**Download Data**

*Download this List
To a Spreadsheet or Other File Type*

| Organization Count | 2 |
| Assets Total | |

Membershi

Account:
Sign In
Become a Member

Search
NonProfit Organizat
Organizations by Na
Organizations by Zip
Organizations by Cit
Organizations by Co
Organizations by Sta
Power Search

- EX 17 -

http://www.taxexemptworld.com/search.asp?type=on&criteria=phipps+houses

8/21/2014

   

**TaxExemptWorld**

Join Now >>  or  Sign In >>

| Enter the Name of an Organization | GO | See NonProfit Organization Information

*2,145,376 Organizations  Assets: $7,578,057,021,600  Income: $3,802,949,109,390*

Home  |  Organization Search  |  Data Downloads  |  Sign In  |  About     Data Updated on 1/5/2014

**Teakroot Discs Wall Art**
Crate and Barrel
$99.95
Find Furniture, Housewares & More at Crate & Barrel. Shop Now.

# HUNTERS POINT SOUTH HOUSING DEVELOPMENT FUND CORPORATION
### Tax Exempt/NonProfit Organization Information

## Shoe Drive Fundraiser

funds2orgs.com

Successful, turnkey solutions to drive funds to YOUR organization

**Membership**
Account:
Sign In
Become a Member

**Search**
NonProfit Organizations:
Organizations by Name
Organizations by Zip Code
Organizations by City
Organizations by County
Organizations by State
Power Search

| Organization Information | |
|---|---|
| **Download Data** | |
| *Download all the information for this tax exempt/nonprofit organization to a Spreadsheet or Other File Type* | |
| **Organization Name/ Address** | HUNTERS POINT SOUTH HOUSING DEVELOPMENT FUND CORPORATION 902 BROADWAY FL 13 NEW YORK, NY 10010-6033 |
| **Asset Amount** | 0 |
| **Income Amount** | 0 |
| **Form 990 Revenue Amount** | 0 |
| **Employer Identification Number** (nine digit number assigned by the IRS to identify a company) | (available with membership or data download) |
| **In Care Of Name** (the officer, director, etc. to whose attention any correspondence should be directed) | PHIPPS HOUSES |
| **Classification** (category under which an organization may be tax exempt) | Social Welfare Organization |
| **Filing Requirement** (the primary return(s) the organization is required to file) | Form 990 - Not required to file (income less than $25,000) |
| **Taxonomy** (classifies an exempt Internal Revenue Code 501 (c)(3) organization) | Public Housing Facilities |
| **Secondary Name** (another name under which this nonprofit organization does business. Also used for trade names, chapter names, or local numbers for subordinate organizations of group rulings) | n/r |
| **Affiliation** (defines the organizational grouping) | This organization is an independent organization or an independent auxiliary (i.e., not affiliated with a National, Regional, or Geographic grouping of organizations). |
| **Deductibility Status** | Contributions are not deductible |
| **Foundation Type** | All organizations except 501(c)(3) |
| | 12/2012 |

— EX 19 —



| Tax Period (the date of the latest return filed) | |
|---|---|
| **Download Data** | |
| *Download all the tax exempt info for this nonprofit organization to a Spreadsheet or Other File Type* | |



Copyright ©2014 TaxExemptWorld.com All rights reserved.  disclaimer

-EX 20-

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through August 21, 2014.

Selected Entity Name: HUNTERS POINT SOUTH BORDEN HOUSING DEVELOPMENT FUND
CORPORATION

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | HUNTERS POINT SOUTH BORDEN HOUSING DEVELOPMENT FUND CORPORATION |
| **DOS ID #:** | 4328374 |
| **Initial DOS Filing Date:** | DECEMBER 05, 2012 |
| **County:** | NEW YORK |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC NOT-FOR-PROFIT CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207

**Registered Agent**

NONE

This office does not record information regarding
the names and addresses of officers, shareholders or
directors of nonprofessional corporations except the
chief executive officer, if provided, which would be
listed above. Professional corporations must include
the name(s) and address(es) of the initial officers,
directors, and shareholders in the initial certificate
of incorporation, however this information is not
recorded and only available by viewing the
certificate.

**\*Stock Information**

– EX 27 –

|  | # of Shares | Type of Stock | $ Value per Share |
|--|-------------|---------------|-------------------|
|  | No Information Available | | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|-------------|-----------|-------------|
| DEC 05, 2012 | Actual | HUNTERS POINT SOUTH BORDEN HOUSING DEVELOPMENT FUND CORPORATION |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Services/Programs | Privacy Policy | Accessibility Policy | Disclaimer | Return to DOS Homepage | Contact Us

~ EX 28 ~

# NYS Department of State

# Division of Corporations

## Entity Information

The information contained in this database is current through August 28, 2014.

Selected Entity Name: SELFHELP COMMUNITY SERVICES HOME ATTENDANT CORP.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | SELFHELP COMMUNITY SERVICES HOME ATTENDANT CORP. |
| **DOS ID #:** | 824245 |
| **Initial DOS Filing Date:** | FEBRUARY 24, 1983 |
| **County:** | BRONX |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC NOT-FOR-PROFIT CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

SELFHELP COMMUNITY SERVICES HOME ATTENDANT CORP.
520 EIGHTH AVENUE (5TH FLOOR)
NEW YORK, NEW YORK, 10018

**Registered Agent**

NONE

~ EX29 ~

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only available by viewing the certificate.

## *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

## Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| FEB 24, 1983 | Actual | SELFHELP COMMUNITY SERVICES HOME ATTENDANT CORP. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS Homepage   |   Contact Us

– EX00 –

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through August 28, 2014.

Selected Entity Name: SELFHELP COMMUNITY SERVICES FOUNDATION, INC.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | SELFHELP COMMUNITY SERVICES FOUNDATION, INC. |
| **DOS ID #:** | 88417 |
| **Initial DOS Filing Date:** | NOVEMBER 30, 1953 |
| **County:** | NEW YORK |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC NOT-FOR-PROFIT CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

SELFHELP FOUNDATION, INC.
5TH FLOOR
520 EIGHTH AVENUE
NEW YORK, NEW YORK, 10018

**Registered Agent**

NONE

This office does not record information
regarding the names and addresses of

-E431-

officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only available by viewing the certificate.

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| AUG 06, 2008 | Actual | SELFHELP COMMUNITY SERVICES FOUNDATION, INC. |
| SEP 14, 1955 | Actual | UNITED HELP, INC. |
| NOV 30, 1953 | Actual | HELP AND RECONSTRUCTION, FUND FOR THE AGED, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS Homepage   |   Contact Us

~EX32~

SELFHELP COMMUNITY SERVICES INC - NEW YORK, NY 10018 - 520 8TH AVE...  Page 1 of 2



# TaxExemptWorld

Join Now >>  or  Sign In >>

[Enter the Name of an Organization]  [GO]  *See NonProfit Organization Information*

*2,145,376 Organizations   Assets: $7,578,057,021,600   Income: $3,802,949,109,390*

Home   |   Organization Search   |   Data Downloads   |   Sign In   |   About   | Data Updated on 1/5/2014

## Teakroot Discs Wall Art
Crate and Barrel
$99.95
Find Furniture, Housewares & More at Crate & Barrel. Shop Now.

# SELFHELP COMMUNITY SERVICES INC
### Tax Exempt/NonProfit Organization Information

**Membership**
Account:
Sign In
Become a Member

**Search**
NonProfit Organizations:
Organizations by Name
Organizations by Zip Code
Organizations by City
Organizations by County
Organizations by State
Power Search

## Irs Form 1099 Misc Printable

▶ pdffiller.com

Download, fax, email or fill online IRS 1099.MISC & more, subscribe now

### Organization Information

**Download Data**

*Download all the information for this tax exempt/nonprofit organization to a Spreadsheet or Other File Type*

| Field | Value |
|---|---|
| **Organization Name/ Address** | SELFHELP COMMUNITY SERVICES INC<br>520 8TH AVE FL 5<br>NEW YORK, NY 10018-6553 |
| **Form 990 - PDF file(s)** (a form 990 is an information return filed with the IRS that shows extensive details on an organization's income, assets, expenses, executives, directors, salaries, compensation, investments, and more) | (available with membership or data download) |
| **Asset Amount** | (available with membership or data download) |
| **Income Amount** | (available with membership or data download) |
| **Form 990 Revenue Amount** | (available with membership or data download) |
| **Employer Identification Number** (nine digit number assigned by the IRS to identify a company) | (available with membership or data download) |
| **In Care Of Name** (the officer, director, etc. to whose attention any correspondence should be directed) | n/r |
| **Classification** (category under which an organization may be tax exempt) | Charitable Organization |
| **Filing Requirement** (the primary return(s) the organization is required to file) | Form 990 - (all other) or 990EZ return |
| **Taxonomy** (classifies an exempt Internal Revenue Code 501 (c)(3) organization) | Human Service Organizations - Multipurpose |
| **Secondary Name** (another name under which this nonprofit organization does business. Also used for trade names, chapter names, or local numbers for subordinate organizations of group rulings) | n/r |
| | This organization is an independent organization |

_ EX 30 ~

| | |
|---|---|
| **Affiliation**<br>(defines the organizational grouping) | or an independent auxiliary (i.e., not affiliated with a National, Regional, or Geographic grouping of organizations). |
| **Deductibility Status** | Contributions are deductible |
| **Foundation Type** | Normally receives no more than one third of its support from gross investment income and unrelated business income and at the same time more than one third of its support from contributions, fees, and gross receipts related to exempt purposes |
| **Tax Period**<br>(the date of the latest return filed) | 06/2012 |

**Download Data**

*Download all the tax exempt info for this nonprofit organization to a Spreadsheet or Other File Type*



Copyright ©2014 TaxExemptWorld.com All rights reserved.  disclaimer

-EX34-

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through August 28, 2014.

Selected Entity Name: SELFHELP COMMUNITY SERVICES, INC.
Selected Entity Status Information

**Current Entity Name:** SELFHELP COMMUNITY SERVICES, INC.
**DOS ID #:** 39075
**Initial DOS Filing Date:** JULY 17, 1937
**County:** NEW YORK
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC NOT-FOR-PROFIT CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information
**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
SELFHELP COMMUNITY SERVICES, INC.
520 EIGHTH AVENUE, 5TH FLOOR
NEW YORK, NEW YORK, 10018
**Registered Agent**
NONE

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which

~ EX 35 ~

would be listed above. Professional
corporations must include the name(s) and
address(es) of the initial officers, directors,
and shareholders in the initial certificate of
incorporation, however this information is
not recorded and only available by viewing
the certificate.

## *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

## Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| OCT 28, 1969 | Actual | SELFHELP COMMUNITY SERVICES, INC. |
| DEC 12, 1939 | Actual | SELFHELP OF EMIGRES FROM CENTRAL EUROPE, INC. |
| JUL 17, 1937 | Actual | SELFHELP FOR GERMAN EMIGRES INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is
unavailable for use in New York State. The entity must use the fictitious name when
conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results  New Search

Services/Programs  |  Privacy Policy  |  Accessibility
Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

- EX 36 -

Tax Exempt Organizations, NonProfit Corporations, Charities

| Download Data | |
|---|---|
| *Download this List To a Spreadsheet or Other File Type* | |
| Organization Count | 73 |
| Assets Total | $204,506,865 |
| Income Total | $142,061,108 |

| Download Data |
|---|
| *Download this List To a Spreadsheet or Other File Type* |

(\* Reported Asset, Income, and Revenue Amounts are available with membership or data download

| Organization Name | Address | Classification | Reported Asset Amount | Reported Income Amount | Form 990 Revenue Amount | Exempt Status As Of Date |
|---|---|---|---|---|---|---|
| AIDS SERVICES FOR THE MONADNOCK REGION-A COMMUNITY COALITION | PO BOX 396 GILSUM, NH 03448-0396 | Charitable Organization | * | * | * | 03/1991 |
| GRAND MONADNOCK ARTS COUNCIL | PO BOX 835 KEENE, NH 03431-0835 | Charitable Organization (Human Service Organizations - Multipurpose) | * | * | * | 01/1976 |
| GRAND MONADNOCK YOUTH CHOIRS (c/o WILLARD GOODWIN) | PO BOX 54 PETERBOROUGH, NH 03458-0054 | Charitable Organization (Singing, Choral) | * | * | * | 09/2002 |
| MOMS CLUB OF MONADNOCK AREA NH (c/o ALLISON MCKENZIE) | PO BOX 339 DUBLIN, NH 03444-0339 | Educational Organization (Human Service Organizations - Multipurpose) | * | * | * | 08/2001 |

- EX 38 -

8/21/2014

Tax Exempt Organizations, NonProfit Corporations, Charities

| Organization | Address | Type | | | | Date |
|---|---|---|---|---|---|---|
| MONADNOCK AFFORDABLE HOUSING CORPORATION (c/o KEENE HOUSING AUTHORITY) | 831 COURT ST KEENE, NH 03431-1712 | Charitable Organization (Housing Development, Construction, Management) | * | * | * | 03/2000 |
| MONADNOCK AIKIKAI INC | 152 DAVIS ST KEENE, NH 03431-3621 | Educational Organization | * | * | * | 08/1987 |
| MONADNOCK AREA ARTISTS ASSOCIATION (c/o GILL TRUSLOW) | PO BOX 864 KEENE, NH 03431-0864 | Charitable Organization (Art Museums) | * | * | * | 07/1998 |
| MONADNOCK AREA COOPERATIVE SCHOOL | PO BOX 192 HANCOCK, NH 03449-0192 | Educational Organization (Education N.E.C.) | * | * | * | 06/1998 |
| MONADNOCK AREA FOOD BANK (c/o ALL SAINTS EPISCOPAL CHURCH) | 51 CONCORD ST PETERBOROUGH, NH 03458-1510 | Charitable Organization (Emergency Assistance (Food, Clothing, Cash)) | * | * | * | 08/1993 |
| MONADNOCK AREA FOSTER PARENT ASSOCIATION (c/o SANDRA DANIEL) | PO BOX 693 WEST SWANZEY, NH 03469-0693 | Charitable Organization | * | * | * | 08/1991 |

(* **Reported Asset, Income, and Revenue Amounts** are available with <u>membership o</u> <u>data download</u>

**Result Page:**   1 <u>2</u> <u>3</u> <u>4</u> <u>5</u> <u>6</u> <u>7</u> <u>8</u>   <u>NEXT></u>

- EX 39 -

8/21/2014

RELATED PARTNERS INC SAL RED WELFARE BENEFIT PLAN & TRUST - NEW YORK, NY 10023 - C/O S MCGUI...    Page 1 of 4





# TaxExemptWorld

**Join Now >> or Sign In >>**

Enter the Name of an Organization [ ] GO    See NonProfit Organization Information

2,145,376 Organizations    Assets: $7,578,057,021,600    Income: $3,8

Home    |    Organization Search    |    Data Downloads    |    Sign In    |    About

## Irs Form 1099 Misc Printable

pdffiller.com

Download, fax, email or fill online IRS 1099.MISC & more, subscribe now

# RELATED PARTNERS INC SAL RED WELFARE BENEFIT PLAN & TRUST

## Tax Exempt/NonProfit Organization Information

| Organization Information | | |
|---|---|---|
| **Download Data** *Download all the information for this tax exempt/nonprofit organization to a Spreadsheet or Other File Type* | | |

EX 40

8/21/2014



# Form an LLC for Less

🌐 upcounsel.com

## Hire a Top Business Attorney Today. Form Your LLC the Right Way.

| Organization Name/ Address | RELATED PARTNERS INC SAL RED WELFARE BENEFIT PLAN & TRUST C/O S MCGUIRE TRUSTEE 60 COLUMBUS NEW YORK, NY 10023-0000 |
| --- | --- |
| **Form 990 - PDF file(s)** (a form 990 is an information return filed with the IRS that shows extensive details on an organization's income, assets, expenses, executives, directors, salaries, compensation, investments, and more) | |
| **Asset Amount** | (available with membership or data download) |
| **Income Amount** | (available with membership or data download) |
| **Form 990 Revenue Amount** | (available with membership or data download) |
| **Employer Identification Number** (nine digit number assigned by the IRS to identify a company) | (available with membership or data download) |
| **In Care Of Name** (the officer, director, etc. to whose attention any correspondence should be directed) | S MCGUIRE TTEE |
| **Classification** (category under which an | |

- EX 41-

RELATED PARTNERS INC SAL RED WELFARE BENEFIT PLAN & TRUST - NEW YORK, NY 10023 - C/O S MCGUI...   Page 3 of 4

8/21/2014

| organization may be tax exempt) | Voluntary Employees' Beneficiary Association (Non-Govt. Emps.) |
|---|---|
| **Filing Requirement** (the primary return(s) the organization is required to file) | Form 990 - (all other) or 990EZ return |
| **Taxonomy** (classifies an exempt Internal Revenue Code 501 (c)(3) organization) | n/r |
| **Secondary Name** (another name under which this nonprofit organization does business. Also used for trade names, chapter names, or local numbers for subordinate organizations of group rulings) | n/r |
| **Affiliation** (defines the organizational grouping) | This organization is an independent organization or an independent auxiliary (i.e., not affiliated with a National, Regional, or Geographic grouping of organizations). |
| **Deductibility Status** | n/r |
| **Foundation Type** | All organizations except 501(c)(3) |
| **Tax Period** (the date of the latest return filed) | 12/2009 |

## Download Data

*Download all the tax exempt info for this nonprofit organization to a Spreadsheet or Other File Type*

—EX 42—

# NYC LOBBYIST SEARCH

## Information for THE RELATED COMPANIES

Go to Business Search Home   |   New Search   |   D

**CLIENT.** Multiple matches were found for "THE RELATED COMPANIES". Please select from the following list:

| Client Name ⊞ | Client Address ⊞ | Begin Date ⊞ | End Date ⊞ | Principal & Additional Lobbyists ⊞ | Lobbyist Address ⊞ | Lobbyist Officer ⊞ | Details ∨ ⊞ |
|---|---|---|---|---|---|---|---|
| The Related Companies | 625 Madison Avenue New York, United States of America 10022 (212) 421-5333 | 03/01/2004 | 12/31/2004 | Yoswein New York, Inc. Jamie Van Bramer Joni Yoswein Jacqui Williams | Yoswein New York, Inc. 74 Trinity Place, Suite 1200 New York, United States of America 10006 (212) 233-5700 | JAMIE VAN BRAMER | VIEW DETA |
| The Related Companies | 60 Columbus Circle New York, NY 10023 United States of America (212) 801-3902 | 01/01/2007 | 12/31/2007 | James F. Capalino & Associates, Inc. Travis Terry James Capalino George Fontas Mark Thompson | James F. Capalino & Associates, Inc. 233 Broadway, Suite 710 New York, NY 10279 United States of America (212) 616-5810 | James F. Capalino | VIEW DETA |
| Related Companies, LP (The) | 60 Columbus Circle New York, United States of America 10023 (212) 421-5333 | 01/01/2006 | 12/31/2006 | Wachtel & Masyr, LLP Ethan Goodman Jesse Masyr Raymond Levin Jerry Johnson | Wachtel & Masyr, LLP 110 East 59th Street New York, United States of America 10022 (212) 909-9500 | JESSE MASYR | VIEW DETA |
| Related Companies, LP (The) | 625 Madison Avenue, ,9 Flr NY, United States of America 10022 | 01/01/2003 | 12/31/2003 | Wachtel & Masyr, LLP (03) ROSEMARY GINTY JESSE MASYR ETHAN GOODMAN JERRY JOHNSON | Wachtel & Masyr, LLP (03) 110 East 59th Street NY, United States of America 10022 (212) 909-9500 | | VIEW DETA |
| THE RELATED COMPANIES, L.P. | 60 COLUMBIA CIRCLE NEW YORK, NY 10023 United States of America | 01/01/2008 | 12/31/2008 | Patricia Lynch Associates CHRISTOPHER GRIMALDI CHRISTOPHER BOMBARDIER ALLISON LEE | Patricia Lynch Associates 677 BROADWAY, SUITE 1105 ALBANY, NY 12207 United States of America | patricia lynch | VIEW DETA |

-EX 43-

# Final FY 2010 Fair Market Rent Documentation System

## The Final FY 2010 Queens County FMRs for All Bedroom Sizes

The following table shows the Final FY 2010 FMRs by unit bedrooms.

| Final FY 2010 FMRs By Unit Bedrooms | | | | | |
|---|---|---|---|---|---|
| | Efficiency | One-Bedroom | Two-Bedroom | Three-Bedroom | Four-Bedroom |
| Final FY 2010 FMR | $1,129 | $1,222 | $1,359 | $1,672 | $1,880 |

The remainder of this page provides complete documentation of the development of the Final FY 2010 Fair Market Rents (FMRs) for **Queens County, New York**. This page provides a summary and details of how the Final FY 2010 FMRs were developed and updated starting with the formation of the FY 2010 FMR Areas from the metropolitan Core-Based Statistical Areas (CBSAs) as established by the Office of Management and Budget and incorporating newly available 2007 one and three year American Community Survey (ACS) Data. FY 2010 FMRs include information from local Random Digit Dialing (RDD) surveys conducted during 2008. Aspects of the derivation of Final FY 2010 rents exclusive to FY 2010 are made explicit in the following text. Aspects unchanged from FY 2009 can be reviewed by clicking on the associated link.

The following defines a summary of the steps taken to generate the Final FY 2010 FMR:

| New York, NY HUD Metro FMR Area Final FY 2010 FMR Calculation Summary | |
|---|---|
| **Process Step** | **Step Result** |
| 1. Begin with Final FY 2009 2 Bedroom FMR | $1,313 |
| 2. Remove Trending and CPI Updates from Final FY 2009 2 Bedroom FMR | $1,178 |
| 3. Determine 2006 to 2007 Update Factor | 1.0282 |
| 4. Apply Update Factor (#2 x #3) | $1,211 |
| 5. Evaluate ACS Survey Result and Determine 2007 Rent | $1,211 |
| 6a. Calculate Update Factors to 2008 and 6b. Trend Factor to April 1, 2010 | 1.0810 1.0376 |
| | $1,359 |

$-EX 46-$

# FY 2010 Income Limits Documentation System

## FY 2010 Income Limits Summary

| FY 2010 Income Limit Area | Median Income | FY 2010 Income Limit Category | 1 Person | 2 Person | 3 Person | 4 Person | 5 Person | 6 Person | 7 Person | 8 Person |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Queens County, New York | | | | | | |
| Queens County | $62,300 | Very Low (50%) Income Limits | $27,750 | $31,700 | $35,650 | $39,600 | $42,800 | $45,950 | $49,150 | $52,300 |
| | | Extremely Low (30%) Income Limits | $16,650 | $19,000 | $21,400 | $23,750 | $25,650 | $27,550 | $29,450 | $31,350 |
| | | Low (80%) Income Limits | $44,350 | $50,700 | $57,050 | $63,350 | $68,450 | $73,500 | $78,600 | $83,650 |

- EX 47 -

FY 2010 Income Limits Documentation System -- Summary for Queens County, New York

Page 2 of 3

NOTE: Queens County is part of the **New York, NY HUD Metro FMR Area**. The **New York, NY HUD Metro FMR Area** contains the following areas: Bronx County, NY.; Kings County, NY.; New York County, NY.; Putnam County, NY.; Queens County, NY.; and Richmond County, NY. .

Income Limit areas are based on FY 2010 Fair Market Rent (FMR) areas. For a detailed account of how this area is derived please see our associated FY 2010 Fair Market Rent documentation system.

Select a different county or county equivalent:

Queens County
Rensselaer County
Richmond County
Rockland County
Saratoga County
Schenectady County

Select County or County Equivalent

Data file last updated Thu., May 20, 2010.

Press Below to select a different State

Select a new State

or

Select a FY 2010 HUD Metropolitan Fair Market Rent Area's Income Limits:

New York, NY HUD Metro FMR Area

Select HMFA Income Limits Area



~ EX 48 ~

8/27/2014

City moves forward on Hunter's Point South | Crain's New York Business

TRENDING:    Met Opera    Midtown market    Vice Media    Rent increases

Thursday, July 3, 2014

Whether it's investing in our existing portfolio,

Get Crain's I (RED) Alert

Sign up for our FRE newsletter. The day news, transactions

Enter your email ad

VIEW SAMPLE  |  NEWSLET

# City moves forward on Hunter's Point South

The de Blasio administration took steps to advance a 30-acre, Bloomberg-era project on the Long Island City, Queens, waterfront that will eventually be home to 5,000 units of housing.

ARTICLE    COMMENTS

BY JOE ANUTA
MAY 28, 2014 12:56 P.M.

-EX 49-

# THE REAL DEAL

NEW YORK CITY REAL ESTATE NEWS

## Dispute over windows halts progress at Hunter's Point South

*Glass panes yet to be shipped after flap over payment erupts, report says*
April 03, 2014 01:00PM

« PREVIOUS     NEXT »



*Hunter's Point South towers wrapped in orange netting*

A contractor squabble over the delivery of $13 million worth of windows for Long Island City development Hunter's Point South may delay the completion of construction's first phase.

A handful of the panes in question, originally set to be delivered in September 2013, arrived last week, a spokesperson for the development partnership of the Related Companies, Phipps Houses Group and Monadnock Construction told the Wall Street Journal reported. Construction on one of the towers finished in October, minus the window panes, and another in January. The buildings have since sat wrapped in orange netting, a pause causing Queens residents and neighboring office workers to scratch their heads.

"We're just sitting and waiting for windows, which is bizarre," James Van Bramer, City Council Majority Leader, told the Journal. "It's disappointing on so many levels."

An attorney for the Florida-based window maker Glasswall LLC told the Journal that the $7 million to $8 million worth of windows have been ready for months but that the developers tried to renegotiate the contract, refusing to pay for them in the meantime.

"We've already produced two-thirds of the material," Jason Giller, an attorney for Glasswall, told the Journal. "We haven't been paid anything."

A spokeswoman for the development trio denied that it attempted to renegotiate the agreed-upon contract to the Journal.

An end to the standoff appears to be imminent, as a few windows have already been delivered by Florida-based Glasswall LLC and several more are expected to be shipped later this week, according to the Journal. [WSJ] — *Julie Strickland*

Tags: hunter's point south

- EX 50 -



NYC Resources   311   Office of th

EMAIL A FRIEND | TRANSLATE THIS PAGE | PRINTER FRIENDLY | EMAIL UPDATES | TEXT SIZE A

Home
Site Index A-Z
About HPD
Language Access Plan
Apartment Seekers
Architects/Engineers
Developers
Homebuyers
Homeowners
Job Seekers
Press Room & Reports
Residential Building Owners
Residential Tenants
Section 8
Vendors
Contact HPD

▸ Search HPD

**2011**   SEE EXHIBIT, PAGE 33 - 35

**Wednesday, February 16, 2011**
**HABITAT FOR HUMANITY – NEW YORK CITY LAUNCHES 12 NEW AFFORDABLE CONDOS IN OCEAN HILL-BROWNSVILLE, BROOKLYN**
Brooklyn, NY, Feb. 15, 2011 –HabitatforHumanity - New York City, joined by future residents, funders and representatives from the community, elected officials, and the City's Department of Housing Preservation and Development (HPD), broke groundtodayonitsnewest 12-unitaffordablecondominiumproject, located in Ocean Hill-Brownsville, Brooklyn.

**Wednesday, February 9, 2011**
**MAYOR BLOOMBERG UNVEILS DEVELOPMENT PLAN FOR HUNTER'S POINT SOUTH IN QUEENS – NEW YORK CITY'S LARGEST NEW AFFORDABLE HOUSING COMPLEX SINCE THE 1970s**
Mayor Michael R. Bloomberg today unveiled the development plan for Hunter's Point South, the largest new affordable housing complex to be built in New York City since the 1970s. A development team, consisting of Phipps Houses, Related Companies and Monadnock Construction, has been selected through a competitive process to build the residential portion of the first phase of the Queens waterfront complex, which includes two mixed-use buildings comprising more than 900 housing units and roughly 20,000 square feet of new retail space. At least 75 percent of the housing will be permanently targeted to low-, moderate- and middle-income families, up from the 60 percent required by the Request for Proposals. The first phase, to be completed in 2014, also includes five acres of new waterfront parkland, a new 1,100-seat intermediate and high school, new retail space and parking. Mayor Bloomberg was joined at the announcement, which took place adjacent to the development site at the Waterfront Crab House on Borden Avenue in Long Island City, by Deputy Mayor for Economic Development Robert K. Steel, Housing Preservation and Development Commissioner Rafael E. Cestero, New York City Housing Development Corporation President Marc Jahr, Parks Commissioner Adrian Benepe, Queens Borough President Helen M. Marshall, Council Member Jimmy Van Bramer, New York City Economic Development Corporation Chief Operating Officer Josh Wallack, Phipps Houses Group President & CEO Adam Weinstein, Related Companies Executive Vice President Bruce A. Beal, Jr., Monadnock Construction President Nick Lembo and Community Board 2 Chair Joseph Conley.

**Monday, February 7, 2011**
**STATEMENT OF MAYOR MICHAEL R. BLOOMBERG ON MACARTHUR GRANT TO EXAMINE THE IMPACT OF AFFORDABLE HOUSING ON LOW-INCOME FAMILIES**
"The just announced, three-year, $1 million grant from the MacArthur Foundation will help New York City obtain first-of-its-kind data on how the affordable housing we are creating under our New Housing Marketplace Plan impacts families. Through the NYC Housing and Neighborhood Demonstration Project, a joint partnership between the City's Department of Housing Preservation and Development and Columbia University, we'll track how affordable housing affects the financial stability, health and living conditions and school performance of 3,000 New York City families. The research will allow the City and others to learn the extent to which affordable housing produces benefits and cost-savings in other areas, such as public health.





- EX 51 -











**Thursday, February 3, 2011**
**HPD COMMISSIONER CESTERO ANNOUNCES LIST OF 200 BUILDINGS WITH 3,300 UNITS IN LATEST ROUND OF ALTERNATIVE ENFORCEMENT PROGRAM USING NEW CRITERIA PASSED BY CITY COUNCIL**
New York, NY - New York City Department of Housing Preservation and Development (HPD) Commissioner Rafael E. Cestero released the list of 200 residential buildings that have been placed into the agency's fourth round of the Alternative Enforcement Program (AEP). The AEP, which was originally signed into law in 2007, is aimed at increasing the pressure on the owners of the City's most distressed residential buildings to bring the properties up to code so that the residents are not forced to live in substandard and hazardous conditions. The buildings were selected using the revised criteria that was passed by the City Council and signed by Mayor Bloomberg earlier this year. Under the amended legislation, the criteria for selection has been modified so that a greater number of buildings with 20 or more units qualify for the program, more than doubling the total of units from approximately 1,400 in the previous round to now more than 3,300. The legislation also specifically designates new conditions requiring improvement, and amends AEP's discharge criteria to allow owners to pay their debt to the City over time as opposed to in a lump sum.

**Monday, January 24, 2011**
**HDC, HPD, HUD, ARKER COMPANIES, WELLS FARGO AND FREDDIE MAC CLOSE FINANCING ON 430 AFFORDABLE APARTMENTS IN TWO PROPERTIES ON STATEN ISLAND**
Staten Island, New York – January 24, 2011 – The NYC Housing Development Corporation (HDC), NYC Department of Housing Preservation and Development (HPD), the Department of Housing and Urban Development (HUD), the Arker Companies, Wells Fargo, and Freddie Mac have joined to rehabilitate two affordable multi-family properties on Staten Island, preserving 430 apartments as affordable to low-income tenants. Collectively known as Concord Seaside, the Concord Court and Seaside Plaza apartment complexes are located in the Park Hill and Fort Worth neighborhoods, approximately 2 miles apart from each.

**Friday, January 21, 2011**
**STATEMENTS OF MAYOR BLOOMBERG AND HOUSING COMMISSIONER CESTERO ON HIS LEAVING CITY SERVICE FOR PRIVATE SECTOR OPPORTUNITY**
Statement of Mayor Michael R. Bloomberg: "Throughout his career, both in City government and in the nonprofit sector, Rafael has embodied the best of what public service can be. During his five years at the City's Department of Housing Preservation and Development, he put his unique brand of innovation and pragmatism to work in advancing our mission to strengthen our neighborhoods and create a more affordable and sustainable city for all New Yorkers.

**Friday, January 14, 2011**
**HDC, HPD, JACKSON DEVELOPMENT AND PARTNERS HAIL COMPLETION OF NEW AFFORDABLE RENTAL APARTMENTS IN THE BEDFORD PARK/NORWOOD SECTION OF THE BRONX**
The New York City Housing Development Corporation (HDC), The NYC Department of Housing Preservation and Development (HPD), the Jackson Development Group, along with Joy Construction and The New York Housing Partnership Development Corporation joined today to celebrate the ribbon-cutting of Decatur Terrace, a 122-unit affordable development located in the Bedford Park/Norwood region of the Bronx.

**Thursday, January 13, 2011**
**MAYOR BLOOMBERG, SPEAKER QUINN AND HOUSING COMMISSIONER CESTERO LAUNCH PROACTIVE HOUSING PRESERVATION INITIATIVE**
Mayor Michael R. Bloomberg, City Council Speaker Christine Quinn and Department of Housing Preservation and Development Commissioner Rafael E. Cestero today launched the



— EX 52 —

Proactive Preservation Initiative, a new, aggressive approach to identify and address deteriorating physical conditions in multifamily buildings throughout the City before they reach a state that endangers the health and safety of residents and threatens the quality of the surrounding neighborhood. Currently, the City's primary means of identifying problem buildings is through complaints received through calls to 311. The Proactive Preservation Initiative will enable the City to identify and address buildings preemptively, and the City expects to use it to put roughly 500 distressed buildings on a path to stability over the next 12 months. The Mayor and Speaker made the announcement at Our Lady of Angels School on Webb Avenue in the Bronx, near 2785 Sedgwick Avenue, one of the 10 buildings of the Milbank housing complex that will be among the first to be rehabilitated as a result of the new initiative. The Mayor and Speaker were joined by Council Member Erik Martin Dilan, State Senator Gustavo Rivera, Assembly Member Vito Lopez, Borough President Ruben Diaz Jr., New York City Housing Development Corporation President Marc Jahr, and Desiree Hunter, Board Member of the Northwest Bronx Clergy Coalition.

Previous 1 2 3 4 5 6

RSS

VIEW SITE MAP

Copyright 2014 The City of New York

Contact Us  |  Privacy Policy  |  Terms

- EX 53 -

Related Companies to Lead Queens Housing Project Team - NYTimes.com

Page 1 of 5

8/27/2014

# N.Y. / Region

greenwich
JEWELERS

shop ▶

DEGENERATE ART
THE ATTACK ON MODERN
ART IN NAZI GERMANY,
1937

THROUGH SEPTEMBER 1

NEUE
GALERIE
NEW YORK

Capital One 360

# Team Chosen for Work on Big Middle-Income Complex in Queens

By CHARLES V. BAGLI



City officials at the Hunters Point South construction site on Wednesday.

Hiroko Masuike for The New York Times

MOST POPULAR

EMAILED | SEARCHED | VIEWED

1. Well: The Decisive Marriage

2. Retiring: Moving to a Smaller Home, and
   Decluttering a Lifetime of Belongings

3. Op-Ed Contributor: How to Get Kids to Class

~ Ex 54 ~

http://www.nytimes.com/2011/02/10/nyregion/10queens.html

Related Companies to Lead Queens Housing Project Team - NYTimes.com

Page 2 of 5

Published: February 9, 2011

**The Bloomberg administration announced Wednesday that it had selected a team led by the Related Companies to construct the first phase of a development on the Queens waterfront that will be the largest middle-income complex built in the city since the 1970s.**



Enlarge This Image

ShoP Architects

A team led by the Related Companies was picked to construct two towers in the first phase of Hunters Point South, here in a rendering.

Related and its partners — Phipps Houses, the largest nonprofit operator of affordable housing in the city, and Monadnock Construction, one of the largest builders of affordable housing — will erect two towers at what is called Hunters Point South, with 908 rental apartments, at least 685 of which will be set aside for working- and middle-class families earning $32,000 to $130,000 a year.

Hunters Point South is a signature project of Mayor Michael R. Bloomberg's housing and waterfront development policies. The entire 5,000-unit complex, which was first announced by the mayor more than four years ago, will offer subsidized housing for an unusually broad swath of working- and middle-class families. The city has invested heavily in the site, buying this once industrial stretch of waterfront, where Newtown Creek enters the East River, for $100 million.

The city is also spending about $175 million on a toxic cleanup of the site, a 10-acre park, roads and water and sewer lines. It is also bestowing $50

THE DROP
SEPTEMBER 12
WATCH TRAILER

TWITTER
LINKEDIN
PRINT
REPRINTS
SHARE

4.  Op-Ed Contributor: Choking the Oceans With Plastic
5.  Generation Later, Poor Are Still Rare at Elite Colleges
6.  Op-Docs: 'A Marriage to Remember'
7.  The Upshot: Dash of Salt Does No Harm. Extremes Are the Enemy.
8.  Life After Brooklyn
9.  FRANK BRUNI: Lost in America
10. Grain Piles Up, Waiting for a Ride, as Trains Move North Dakota Oil

Go to Complete List »

ELSEWHERE ON NYTIMES.COM



**Life after Brooklyn**

Shelter Island hits new highs

The buddy system

SAVE 50% FOR 26 WEEKS    CLICK HERE >

• ENDS SEPT 3 •

Ads by Google    what's this?

8/27/2014

- EX55 -

Related Companies to Lead Queens Housing Project Team - NYTimes.com

**Solar Renewable Energy**
Go Solar For $0 Down With Sunrun.
Save 30% On Your Home Energy Bill.
sunrun.com

million in grants to subsidize the affordable units in the first two buildings. A school is scheduled to open in 2013.

"At Hunters Point South," Mr. Bloomberg said in a statement, "not only will we build the largest affordable housing complex in more than three decades, we'll do it on a long-vacant waterfront property that has incredible views and sits adjacent to one of New York City's fastest growing neighborhoods."

The project has been a long time coming. Years ago, as part of its ultimately unsuccessful bid for the 2012 Olympics, the Bloomberg administration wanted to use the land to build housing for athletes; after the Olympics, the housing would have been turned into apartments. At the time, some officials in Queens feared that it would become a slum.

But as developers and investors began buying up large blocks of housing for poor and working-class families, raising fears that rents would quickly rise, Mr. Bloomberg announced plans in 2006 to build affordable housing at the waterfront site.

Stephen M. Ross, chief executive of the Related Companies, at first hoped to persuade the Real Estate Board of New York, the powerful lobbying arm of the real estate industry, to build the housing on a nonprofit basis. But Mr. Ross, who then headed the board, had trouble persuading his fellow developers to take on the project, and the city was reluctant to turn the entire site over to a single entity.

"This is something I believe in passionately," Mr. Ross said. "To succeed and prosper, the city has to build workforce housing. It can't be the most expensive city to live and work in. But there haven't been any middle-income housing programs for the past 20 years."

-EX 56-

Related Companies to Lead Queens Housing Project Team - NYTimes.com

Rival developers complained privately that the city would favor Mr. Ross because of his close ties to the Bloomberg administration. City officials went to great lengths to explain why the Related team was chosen.

Rafael E. Cestero, the city's housing commissioner, said that the Related-Phipps-Monadnock team had submitted the lowest-cost bid and adhered most closely to the city's design guidelines. Indeed, it was the only one, he said, that offered to build all the apartments for poor, working- and middle-class families. The city will be subsidizing only 75 percent of the project because of financial constraints on its part, Mr. Cestero said.

"I'm disappointed," said K. Thomas Elghanayan, chairman of TF Cornerstone, a finalist in the competition. "But Related is a very competent firm."

The Related proposal is a victory of sorts for the city, which was hoping for at least 60 percent of the units to be affordable. The city plans to begin building the water and sewer lines next month, along with 5 acres of the planned 10-acre park.

Construction of the two apartment buildings will not begin until June 2012 and will take about two years to complete. The rest of Hunters Point South will not be completed until after Mr. Bloomberg leaves office.

A version of this article appeared in print on February 10, 2011, on page A22 of the New York edition.

↻ SAVE 50% FOR 26 WEEKS

CLICK HERE ›

◄ ENDS SEPT 3 ►

PRINT

REPRINTS

what's this?

Ads by Google

-EX 57-